UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LYNN VINCENT, individually and on behalf of
The Estate of JORDAN JAMISON, deceased,

        Plaintiff,

-vs-                            Case No. 11-C-205

QUALITY ADDICTION MANAGEMENT, INC.,
and JOYCE MADISON,

        Defendants.

## DECISION AND ORDER

This matter is before the Court on Defendant Quality Addiction Management, Inc.'s ("QAM") motion to dismiss the claims of the Plaintiff Lynn Vincent ("Vincent") individually and on behalf of the Estate of Jordan Jamison ("Jamison"), deceased (the "Estate"), pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 37.) Although Vincent makes claims on both the Estate's behalf and her own, for purposes of this Decision and Order the Court will refer to the Estate's claims and Vincent's claims separately. The motion is fully briefed and is addressed herein.

The Second Amended Complaint ("Complaint") makes five claims: The Estate's Counts I (a negligence claim against QAM), II and III (negligence claims against Joyce Madison ("Madison")); and Vincent's Counts I (wrongful death claims against QAM and Madison) and II (an intentional infliction of emotional distress claim

against Madison). QAM seeks dismissal of the Estate's negligence claim (Count I) and Vincent's wrongful death claim (Count I) against it.

This Court has jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332. Venue is afforded by 28 U.S.C. § 1391(b)(2).

## Standard of Review

For a complaint to withstand a Rule 12(b)(6) motion, Federal Rule of Civil Procedure 8(a)(2) requires that a claimant provide "a short and plain statement of the claim showing that the pleader is entitled to relief." The pleading must include more than mere legal conclusions or a recitation of the cause of action elements, but does not require detailed factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). The pleading must meet a plausibility threshold; mere possibility is not enough. *Id.* at 570. Plausibility means there are enough facts in the complaint for a reviewing court to draw a reasonable inference that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

For purposes of resolving a Rule 12(b)(6) motion, the Court accepts all stated facts as true and draws all reasonable inferences in favor of the plaintiff. *See Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). This threshold requires that the Court utilize its judicial experience and common sense within the context of the facts to determine whether the pleading meets the plausibility standard. *Iqbal*, 556 U.S. at 678-79. In addressing the motion to dismiss, the Court considers the following factual allegations of the Complaint as true.

**Relevant Facts**

QAM is a Wisconsin corporation with its principal place of business in Wisconsin. Jamison, Vincent's son, resided with her in Gwinn, Michigan and was a citizen of Michigan. Vincent and the Estate are citizens of Michigan.

Jamison died on May 24, 2008, as a result of having ingested 200 milligrams of liquid methadone. Jamison illegally obtained the methadone from family friend Madison.

Methadone, a schedule II substance, is a highly addictive and dangerous narcotic with high potential for severe psychological or physical dependence and as such must be used in medical treatment with severe restrictions. Drug addiction treatment centers that prescribe methadone must abide by the federal standards set out in 42 C.F.R. §8.12, including close monitoring and assessment of patients who receive take-home doses of methadone. The federal monitoring and assessment requirements are intended to prevent the diversion of methadone, assure that patients are taking the proper dosage of methadone, and prevent patients who are using other illegal addictive narcotics from participating in the take-home phase of the methadone treatment or from participating in any clinical treatment program.

At all times relevant to the action, Madison was attempting to recover from an addiction to prescription narcotics. QAM, a health care provider for individuals with opiate dependence, had been treating Madison since 2006. Madison obtained the methadone that Jamison ingested from QAM's Green Bay, Wisconsin branch.

During the spring of 2008, as part of the third phase of Madison's outpatient drug addiction treatment, QAM distributed weekly take-home dosages of methadone — 180 milligrams for each day — to her. QAM allowed Madison to store the methadone at her home and ingest the doses without supervision despite her history of addiction to prescription narcotics.

For about ten days in May 2008, Jamison visited Green Bay. After returning to Michigan, Jamison made a trip to Wisconsin on May 23, 2008, to retrieve some of his possessions. On the afternoon of May 23, 2008, Jamison and his girlfriend visited Madison's Oconto Falls, Wisconsin home. During that visit, Madison violated QAM instruction and policy by providing Jamison with an unknown amount of money and at least 200 milligrams of the methadone she had received as take-home doses from QAM in exchange for a box of 80 pills from Jamison. The pills were Benadryl, a non-prescription antihistamine used to treat nasal and non-nasal allergy symptoms, but Madison believed they were a combination of Ecstasy, OxyContin, and morphine, the use of which is a violation of QAM policy and Wisconsin criminal law. On the evening of May 23, 2008, Jamison and his girlfriend rented a room at a Motel 6 in Green Bay, and Jamison ingested the methadone that Madison had received from QAM. Jamison died between 8 and 9 a.m. on May 24, 2008.

Because QAM failed to properly assess Madison's long-standing addiction to prescription narcotics as a potential risk for illegal diversion and allowed Madison to take home a week's worth of methadone, it failed to prevent the illegal diversion of

methadone from Madison to Jamison.  Because QAM failed to properly monitor Madison's methadone use, it failed to prevent Jamison from receiving Madison's methadone prescription.

In two telephone conversations with Vincent, Madison admitted that she provided methadone to Jamison the evening before his death.  On June 16, 2008, Vincent communicated Madison's admission to Detective Paul Long ("Long") of the Green Bay Police Department.  On July 2, 2008, after Medical Examiner Al Kimek had confirmed that Jamison's death was due to a methadone overdose, Long obtained Vincent's permission to record a telephone conversation between Vincent and Madison.  During the conversation, Madison again admitted that on May 23, 2008, she provided Jamison with the methadone.

On October 9, 2008, Madison was arrested and charged with first degree reckless homicide which was later reduced to a charge of manufacturing/delivering schedule I or II narcotics in violation of Wis. Stat. § 961.41(1)(a).  Madison pled no contest and was convicted of the charge on March 23, 2009.

**Analysis**

The Estate brings a negligence claim against QAM for breaching its duty to third parties such as Jamison by failing to comply with its obligations under the federal opioid treatment regulations of 42 C.F.R. § 8.12.  The Estate alleges that QAM failed to use reasonable care to follow the federal regulations by distributing a week's worth of methadone doses to Madison per visit; failing to properly supervise

her; failing to regularly test Madison's methadone levels to determine whether she was ingesting the required doses; failing to test her to determine whether she was continuing to use any other illegal or addictive narcotics or any non-narcotic drugs that QAM may have prohibited; and failing to prevent Madison from receiving treatment after she was previously found to have diverted methadone or violated other laws or QAM procedures. QAM's negligence caused the death of Jamison. Vincent's claim is brought pursuant to Wisconsin's wrongful death statute, Wis. Stat. § 895.04.

By its Rule 12(b)(6) motion, QAM asserts that because Madison and Jamison engaged in intentional and voluntary criminal activity by selling and exchanging the drugs that allegedly caused Jamison's death,[1] the negligence claims against it are precluded as a matter of law. Vincent asserts that QAM's motion misstates the law and overlooks subtle but important characteristics of this case.

Although the parties have not addressed the choice of law issue, they are in apparent agreement that substantive Wisconsin law applies to the claims against QAM. All the relevant events, including Jamison's death, occurred in Wisconsin. Thus, the Court analyzes the claims against QAM under the substantive law of Wisconsin. *See e.g. Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013) (stating that when neither party raises a conflict of law issue and jurisdiction is premised on

---

[1] QAM's brief does not identify the Wisconsin Statute violated by Jamison's acquisition and ingestion of the methadone. However, his conduct would violate Wis. Stat. § 961.41(3g).

- 6 -

diversity, the court applies the substantive law of the state where it sits). The Court is to apply the substantive law of the state whose law governs the dispute as it believes the courts of that state would. *See Davis v. G.N. Mortg. Corp.,* 396 F.3d 869, 876 (7th Cir. 2005).

The issue before the Court is whether, at this stage of the proceedings, Wisconsin law affords the Estate and Vincent a legal remedy for the damages resulting from Jamison's death. It is undisputed that the transaction between Jamison and Madison, which allowed Jamison to acquire the methadone, was illegal.

Both QAM and Vincent cite case law broadly referring to equitable doctrines when both parties have engaged in wrongful conduct.[2] In cases involving multiple defendant joint tortfeasors that include both intentional wrongdoers and negligent wrongdoers, Wisconsin allows negligent tortfeasors the right to indemnity from the intentional joint tortfeasors. *Fleming,* 388 N.W.2d at 911. Wisconsin law also follows the equitable *in pari delicto* doctrine, which may bar a plaintiff's recovery if the plaintiff's wrongful activity is just as wrongful as the defendant's. *Evans v. Cameron*, 121 Wis.2d 421, 427-28, 360 N.W.2d 25, 28 (Wis. 1985). These principles are premised on the idea that "[n]o court will lend its aid to a man who founds his cause of action upon an immoral or illegal act." *Id.* (quoting *Clemens v. Clemens*, 28

---

[2]*In Re Wilkins' Estate*, 192 Wis. 111, 111, 211 N.W. 652, 655 (Wis. 1927) (no one can take advantage of his own wrong), overruled in part by *In re Wilson's Will,* 5 Wis. 2d 178, 182-83, 92 N.W. 2d 282, 284-85 (Wis. 1958); *Fleming v. Threshermen's Mut. Ins. Co.*, 131 Wis. 2d 123, 130, 388 N.W.2d 908, 911 (Wis. 1986) (negligent tortfeasors have a right to indemnity from intentional tortfeasors).

- 7 -

Wis. 637, 654 (Wis. 1871)).

QAM seeks dismissal of the claims against it because of the illegal conduct that both Jamison and Madison engaged in. However, according to the allegations of the Complaint, QAM also violated its duty to Jamison and other third parties by failing to comply with federal regulations that require drug addiction treatment centers such as QAM to carefully monitor and assess the clients to whom they distribute methadone for off-site use and administration. QAM has not viewed the factual allegations of the Complaint in the light most favorable to the Estate and Vincent.

According to the Complaint, if not for QAM's negligent breach of its duty to comply with federal regulations designed to control the distribution and use of methadone by known drug addicts such as Madison, Jamison would have been unable to acquire the methadone from Madison that ultimately caused his death. The equitable principles upon which QAM relies may also be applied to its theory of defense. Should a drug addiction treatment center that breaches its legal obligations and duties to carefully dispense and monitor the addictive controlled substances it has distributed escape liability because those persons who subsequently distribute and acquire those substances as the result of the drug treatment center's breaches do so in violation of criminal law?

At this juncture of the proceedings, the handful of substantive cases cited by QAM do not establish that the Estate and/or Vincent failed to state a claim against it. QAM cites *Oshiver v. Levin*, *Fishbein, Sedran & Berman*, 38 F.3d 1380, 1392 (3rd

Cir. 1994), in both its initial and reply brief, (ECF Nos. 38, 40), to the effect that "the fundamental rule of equity [is] that a party should not be permitted to profit from its own wrongdoing." *Id*. at 1388. *Oshiver* reviewed a Rule 12(b)(6) dismissal of a plaintiff's discriminatory failure to hire and discharge claim as being time-barred; citing the fundamental rule in a totally different context, and applying the rule to the equitable tolling doctrine as articulated by the Court of Appeals for the Fifth Circuit in *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924, 930 (5th Cir. 1975). While *Oshiver* supports the maxim, it does not involve the substantive law of Wisconsin or an analogous context.

QAM also cites *In re Wilkens' Estate*, 211 N.W. at 656, which, again, is not analogous to the facts of this case. *Wilkens' Estate* involved an appeal from a decision holding that murderer Athanacios Kurasethas ("Kurasethas"), who was left $5,000 and named as a residual beneficiary of the Estate of Edith Wilkins ("Wilkins"), could not inherit under her will given that he had shot her and then immediately killed himself. The court concurred that "the will became inoperative at the time of the death of [Wilkins], insofar as the rights of [Kurasethas] were concerned," emphasizing that "[n]o system of laws permits a criminal to profit by his own crime, for, if this were so, the very object of all law would be subverted." *Id*. at 655-56.

In *Wilkens*, the court rejected the possibility that a constructive trust existed. *Id*. at 655. Subsequently in *Wilson*, a proceeding involving the will of a woman who was murdered by her husband, the Wisconsin Supreme Court reconsidered the issue

- 9 -

and determined that the preferable approach was a constructive trust theory because it was based on "sounder logic" and afforded "greater flexibility" to a court of equity in arriving at a just result that did not defeat the intent of the deceased. 92 N.W.2d at 285. *Wilson* reversed the trial court's determination that the will, which would have left the whole estate to the husband, was entirely inoperative and the estate should be distributed as intestate property, and remanded the case for further proceedings so that the trial court could hear additional testimony to determine how the decedent's wishes could be best effectuated given the post-murder facts. *Id*. at 287-88.

Here, the allegations of the Complaint construed in the light most favorable to the Estate and Vincent are not analogous to those of *Wilkens* or *Wilson*. While the exchange of the methadone for money and other drugs violated state criminal laws, Jamison's death was not the intended consequence of the drug transaction (unlike the crime of murder committed by one who stands to inherit). The initial charge against Madison was reckless, not intentional, homicide. There is no allegation that Jamison intended to overdose or to commit suicide by taking the methadone. Based on the Complaint and construing the factual allegations and the inferences from those allegations in the light most favorable to the Estate and Vincent, QAM has not established that either the Estate or Vincent failed to state a cause of action against it.

QAM also relies heavily upon the Wisconsin Supreme Court's decision in *Imark Industries v. Arthur Young & Co.,* 148 Wis.2d 605, 624, 436 N.W.2d 311, 319 (Wis. 1989). *Imark* involved post-verdict review — not dismissal for failure to state a
- 10 -

claim.

QAM asserts that public policy considerations should preclude the claims against it, citing *Peters v. Menard, Inc.,* 224 Wis. 2d 174, 193, 589 N.W.2d 395, 405 (Wis. 1999); *Johnson v. Grzadzielewski*, 159 Wis. 2d 601, 609, 456 N.W.2d 503, 506 (Wis. Ct. App. 1990); and *Brunette v. Employers Mut. Liability Ins. Co. of Wis.*, 107 Wis. 2d 361, 364, 320 N.W.2d 43, 45 (Wis. Ct. App. 1982). The public policy factors to be considered are:

> (1) The injury is too remote from the negligence; or (2) [t]he injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point.

*Peters,* 589 N.W.2d at 405. (Citations omitted). Whether public policy considerations will result in nonliability is a question of law for the court to decide. *Id.*

*Johnson*, 465 N.W.2d at 505-06, involved an action brought by Todd Johnson ("Johnson"), a university student who was injured trying to crawl out the top hatch of a dormitory elevator stopped between two floors after he had deliberately tampered with the elevator to increase its speed. Johnson appealed the summary judgment dismissal of his negligence claims against the defendants, including the company that sold, installed, and maintained the elevator, and the denial of his motion for default judgment against the defendant that designed, manufactured, and sold the door and

closure mechanism. The court of appeals upheld the rulings because the undisputed facts established that Johnson's negligence exceeded 51 percent and, therefore, he was barred as a matter of law from recovering any damages. *Id*. at 506. The court also held that public policy grounds would bar any recovery by Johnson, relying on three factors: (1) the injury was too remote from the negligence; (2) the injury was too wholly out of proportion to the culpability of the tortfeasor; and (3) allowance of a recovery would enter a field that had no sensible stopping point. *Id*.

*Brunette,* 320 N.W.2d at 44, involved an appeal from the dismissal of an action that plaintiff, motorcyclist David P. Brunette ("Brunette"), filed against a city and a city police officer for injuries Brunette sustained after a high-speed chase ended with the officer's squad car striking his motorcycle. The encounter began with Brunette running a stop sign and refusing to pull over when the police officer attempted to stop him. *Id.* The chase ensued, culminating in Brunette's injuries. *Id*. The Wisconsin court of appeals upheld the jury's finding that the officer did not intentionally strike Brunette's motorcycle and held that as a matter of law Brunette could not recover for the officer's negligence because Brunette's own negligence in intentionally placing himself in a position of known danger was greater than that of the officer. *Id*. at 44-45. The court also stated that by denying recovery to the motorcyclist it was furthering the state policy of encouraging traffic violators to submit to lawful arrest. *Id*. at 45.

*Peters*, 589 N.W.2d at 398, involved a question certified by the Wisconsin court of appeals that arose on the appeal by the Estate of Brian Peters ("Estate") and

family members from summary judgment dismissing their wrongful death action for negligence against Menard, Inc. ("Menard"), Advanced Private Investigations ("API"), a private security firm hired by Menard, and their insurers. After allegedly shoplifting a drill from a Menard's store, Brian Peters ("Peters") drowned while fleeing API security guards. *Id*. The court upheld the summary judgment and affirmed the trial court's ruling that as a matter of law Peters' negligence was greater than that of the guards. The claims were also barred on public policy grounds because Peters' injury was remote from any negligence of the security guards and was "completely out of proportion to any possible culpability on their parts." *Id*. at 406-07.

Jamison's own illegal conduct and related public policy concerns will be involved in the ultimate resolution of this action. However, based on the Complaint alone, taking all well-pleaded facts as true and viewing them in the light most favorable to the Estate and Vincent, the Court cannot hold as a matter of law that the causes of action against QAM are barred on public policy grounds. Based on the foregoing, QAM's motion to dismiss for failure to state a claim is denied.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

QAM's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 37) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 24th day of September, 2013.

                                                    BY THE COURT:

                                                  _____
                                                  **HON. RUDOLPH T. RANDA**
                                                  **U.S. District Judge**